UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00154-GNS

JEFFREY JOHNSON                                                                PLAINTIFF

v.

OFFICER RICHARD STEEN                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Officer Richard Steen's ("Steen") Motion

for Failure to Comply with Court Order (DN 19) and his Motion for Summary Judgment (DN

20). The motions are ripe for decision.  For the reasons stated below, the Court **DENIES** the

motion to dismiss and **GRANTS** the motion for summary judgment.

## I.  SUMMARY OF FACTS AND CLAIMS

On July 1, 2014, the Henry County, Tennessee sheriff's office issued a warning to "be on

the lookout" ("BOLO") for a blue Ford Ranger truck with the word "swift" written in white on

the hood being driven by Plaintiff Jeffrey Johnson ("Johnson"). (Def.'s Mot. for Summ. J. Ex. 5,

DN 20-5). The same day the Murray Police Department received a call through the 911 line from

Edwina Lewis ("Lewis").[1] (Def.'s Mot. for Summ. J. Ex. 6, DN 20-6). She described Johnson's

truck, stated that he was a paranoid schizophrenic, that he was in possession of firearms despite

being a convicted felon, that his cousin in Tennessee saw him shoot a gun into the area, and that

---

[1] While the date on the transcript is listed as July 2, 2015, the Court assumes this to be a
typographical error based on the representations in the memorandum in support of Steen's
motion to dismiss, and that the correct date is July 1, 2014. (Mem. in Supp. of Def.'s Mot. for
Summ. J., DN 20-1).

the cousin saw Johnson place bullets in his pocket.  (Def.'s Mot. for Summ. J. Ex. 6). Lewis gave a specific address of where Johnson was headed and stated, "He's going to hurt somebody, I'm telling ya." (Def.'s Mot. for Summ. J. Ex. 6). The Murray Police Department then conveyed this information to the Calloway County Sheriff's Office, which in turn relayed the information to the Kentucky State Police ("KSP"). (Def.'s Mot. for Summ. J. Ex. 7 at 1, 4, DN 20-7).

Steen, a captain at the Calloway County Sheriff's Office, was dispatched to the location given by Lewis, and he met Lewis in the roadway near the address she had given. (Def.'s Mot. for Summ. J. Ex. 8, DN 20-8). En route to the scene, Deputy Danny Williams ("Williams") pulled up behind Johnson's vehicle, which was also heading toward Steen and Lewis's location. (Def.'s Mot. for Summ. J. Ex. 8). Johnson then turned onto the road where Steen's vehicle and Lewis were located and appeared to accelerate. (Def.'s Mot. for Summ. J. Ex. 8). Steen activated his emergency equipment and moved his vehicle between Lewis and Johnson, though had to stop in order to avoid a head-on collision with Johnson. (Def.'s Mot. for Summ. J. Ex. 8).

Johnson then veered to the right off the road and into a yard. (Def.'s Mot. for Summ. J. Ex. 12, DN 20-12). Steen made a u-turn into the yard in pursuit of Johnson. (Def.'s Mot. for Summ. J. Ex. 12). The vehicles then crossed over the road and made contact in or near a driveway. (Def.'s Mot. for Summ. J. Ex. 12). Steen continued to push Johnson's vehicle with his own, and the vehicles ultimately came to a stop with Johnson's vehicle resting against a building and Steen's vehicle against Johnson's. (Def.'s Mot. for Summ. J. Ex. 12).

Williams then ordered Johnson out of the vehicle, and he refused. (Def.'s Mot. for Summ. J. Ex. 8). Steen then went to assist Williams. (Def.'s Mot. for Summ. J. Ex. 8). As they were removing Johnson from his truck, he was holding an aluminum pipe. (Def.'s Mot. for Summ. J. Ex. 8). Once out of the vehicle he kicked Williams, refused to comply with commands,

and tried to reach into the bed of the truck. (Def.'s Mot. for Summ. J. Ex. 8). A short struggle ensued, and eventually Johnson was handcuffed with the assistance of KSP Trooper Jody Cash ("Cash"). (Def.'s Mot. for Summ. J. Ex. 8). During the arrest, Steen noted that Johnson was wearing a "carpenter's belt" containing 87 shotgun shells and a claw hammer. (Def.'s Mot. for Summ. J. Ex. 8). The officers located a 12-gauge shot gun in the bed of the truck. (Def.'s Mot. for Summ. J. Ex. 8).

Johnson alleges that, following the collision, Steen screamed at him, "I'm going to shoot you." (Compl. 5, DN 1). Johnson also states that he was pinned in his truck, and cooperative to the best of his ability given that limitation. (Compl. 6). He states that Williams then tried to pull him out of the truck by his left arm which was in a brace from a prior surgery. (Compl. 6). Ultimately, both officers pulled on his injured left arm to get him out of the truck with Johnson protesting that he was cooperative while in pain. (Compl. 6-7). Johnson also states that, several minutes after he had been cuffed and was lying on the ground, Steen jumped on his back and yelled that he was going to kill Johnson. (Compl. 8).

Following the arrest, Steen visited the Murray-Calloway County Hospital where he was diagnosed with lumbar strain, a sprained right wrist, and a contusion on his right knee. (Def.'s Mot. for Summ. J. Ex. 13, DN 20-13). Williams also visited the Murray-Calloway County Hospital for treatment for a blow to his left knee "by man being detained." (Def.'s Mot. for Summ. J. Ex. 15, DN 20-15). Johnson was also transported to the Murray-Calloway County Emergency Room. (Def.'s Mot. for Summ. J. Ex. 12). Cash visited Johnson at the emergency room, at which point Johnson stated that he was not wearing a seat belt at the time of the collision, had not been taking his medication as prescribed, and that he had injuries to his neck and left wrist prior to the collision. (Def.'s Mot. for Summ. J. Ex. 12).

3

A Calloway County grand jury subsequently indicted Johnson on two counts of wanton endangerment and one count each of fleeing or evading the police, second degree assault of a police officer, third degree assault of a police officer, being a felon in possession of a firearm, first degree criminal mischief, resisting arrest, failure to wear seat belts, and reckless driving. (Def.'s Mot. for Summ. J. Ex. 2, DN 20-2; Def.'s Mot. for Summ. J. Ex. 4, DN 20-4). In May 2015, Johnson pleaded guilty to the first eight charges and received a sentence of ten years of incarceration. (Def.'s Mot. for Summ. J. Ex. 3, DN 20-3).

On August 12, 2014, Johnson filed this action asserting various claims relating to his arrest. On January 16, 2015, this Court dismissed all of the claims against Steen except for those alleged against him in his individual capacity for: (1) a First Amendment retaliation claim; (2) a Fourth Amendment excessive force claim; and (3) a state law intentional infliction of emotional distress ("IIED") claim. (Mem. Op. & Order, DN 13). Steen filed his motion to dismiss and motion for summary judgment on July 27, 2015. (Defs.' Mot. for Failure to Comply with Ct. Order; Def.'s Mot. for Summ. J.). Johnson has not responded to either motion, and the time to do so has passed. The motions are thus ripe for adjudication.

## II. JURISDICTION

Johnson alleges claims arising under 42 U.S.C. § 1983. This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As to Johnson's state-law claims, this Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

### III.  **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion . . . ." *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). "When moving for summary judgment the movant has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists 'a genuine issue for trial.'" *Id.* (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).  Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

5

# IV. <u>DISCUSSION</u>

### A.     <u>Motion to Dismiss</u>

Steen's motion to dismiss is premised on the fact that Johnson failed to timely file a pretrial memorandum. (Defs.' Mot. for Failure to Comply with Ct. Order). Steen asserts that "said filing is a material requirement in the case," and accordingly that the Complaint should be dismissed for failure to file his pretrial memorandum and his failure to file discovery. (Defs.' Mot. for Summ. J. 2). Problematically, Steen cites no authority for the proposition that the Court may dismiss a complaint for failure to file a pretrial memorandum.

Federal Rule of Civil Procedure 41(b) allows the Court to dismiss a case for want of prosecution or failure to comply with a court order. Fed. R. Civ. P. 41(b). This Sixth Circuit has "cautioned that dismissal for failure to prosecute 'is a harsh sanction which the court should order only in extreme situations showing a "clear record of delay or contumacious conduct by the plaintiff."'" *Schreiber v. Moe*, 320 F. App'x 312, 317 (6th Cir. 2008) (quoting *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991) (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980))).

Similarly, Federal Rule of Civil Procedure 16(f) allows the Court to impose the sanction of involuntary dismissal for failure to obey a scheduling or other pretrial order. Fed. R. Civ. P. 16(f). The same "clear record of delay or contumacious conduct on the part of the plaintiff or at the very least a warning of that consequence" is required for dismissal under Rule 16(f). *Lindsay v. U.S. Veterans Admin.*, 825 F.2d 411, at *2 (6th Cir. 1987) (unpublished table decision). Because Steen has not shown "a clear record of delay or contumacious conduct" by Johnson, the Court denies Steen's motion to dismiss.

6

### B.   <u>Qualified Immunity</u>

Steen also maintains that he is entitled to summary judgment on the basis of qualified immunity as to Johnson's First Amendment retaliation and Fourth Amendment excessive force claims. (Defs.' Mot. for Summ. J. 5-6). "Qualified . . . immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (citation omitted). It consists of two aspects: one objective and the other subjective. *Id.* "The objective element involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.' The subjective component refers to 'permissible intentions.'" *Id.* (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). Qualified immunity will not protect an official who "knew or reasonably should have known" that his action taken within his "sphere of official responsibility" would violate a plaintiff's constitutional rights, or if the official "took the action with the malicious intent to cause a deprivation of constitutional rights or other injury . . . ." *Id.* (citation omitted). In short, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 816 (citations omitted).

Because Steen appears to acknowledge that his acts were discretionary, the only question is whether he violated one or more of Johnson's clearly established statutory or constitutional rights of which a reasonable person would have known. (Defs.' Mot. for Summ. J. 5).

### 1.   *Retaliation*

In his complaint, Johnson alleges that Steen improperly arrested him because he had a pending case against the Calloway County Sheriff's Office at the time of his arrest. (Compl. 5, 10). The Supreme Court "has never recognized a First Amendment right to be free from a

retaliatory arrest that is supported by probable cause," nor could the Court discover any statutory basis for such a right. Johnson is estopped "from arguing that his arrest was made without probable cause because he pled guilty to the resulting offenses." *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012); *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 378 (6th Cir. 2006) (citations omitted). Johnson's arrest was therefore supported by probable cause as a matter of law. Accordingly, Steen did not violate Johnson's clearly established First Amendment rights when he arrested him, and the Court will grant qualified immunity to Steen as to this claim.

## 2.    *Excessive Force*

Johnson has alleged that Steen jerked and twisted his left wrist, which was in a brace because of prior surgery. (Compl. 6-7). Johnson also alleged that, after he was handcuffed for several minutes, Steen jumped on his back twice. (Compl. 7-8).

"[Excessive force] claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (internal quotation marks omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). The Supreme Court noted three non-exclusive factors for courts to consider in analyzing whether the force used to seize a person was excessive: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest by flight." *Id.* (citing *Tennessee v. Gardner*, 471 U.S. 1, 8-9 (1985)).

There is no evidence to support Johnson's allegations of excessive force other than his bare allegations. The only evidence presented in this case has been that submitted by Steen as attachments to his motion for summary judgment, and it is bereft of any indication that Steen

used excessive force. On the contrary, it shows that Steen was injured as a result of the collision with Johnson (Def.'s Mot. for Summ. J. Ex. 13), and that Williams was injured by Johnson during the arrest (Def.'s Mot. for Summ. J. Ex. 15). In sum, even in the light most favorable to Johnson, Steen did not violate Johnson's clearly established Fourth Amendment rights. Accordingly, the Court the Court will grant qualified immunity to Steen as to this claim.

### C.     IIED

Finally, Johnson asserts an IIED claim in the Complaint. (Compl. 10). To prove an IIED claim, a plaintiff must present evidence, *inter alia*, that "the conduct . . . [was] so outrageous and intolerable in that it offends against the generally accepted standards of decency and morality . . . ." *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2 (Ky. 1990) (citation omitted). Kentucky law requires a high threshold to prove an IIED claim. *See McKinney v. Lexington-Fayette Urban Cnty. Gov't*, No. 5:12-CV-360-KKC, 2015 WL 4042157, at *12 (E.D. Ky. July 1, 2015). "[P]etty insults, unkind words, and minor indignities" are insufficient. *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996).

In this case, however, the Court has found that the only evidence offered in this matter reflects that Steen did not use excessive force while arresting Johnson; his conduct was thus not outrageous or intolerable. In addition, Johnson's claims are more properly characterized other some other traditional common-law tort rather than IIED, which precludes this claim. *See Brewer v. Hillard*, 15 S.W.3d 1, 7-8 (Ky. App. 1999) (noting that IIED is a 'gap-filler' tort intended to provide a remedy when no other tort is available . . . ." (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993)).

There is, therefore, no genuine issue of material fact as to Johnson's IIED claim. Accordingly, the Court will grant summary judgment to Steen.

## V.  <u>CONCLUSION</u>

Based on the foregoing, **IT IS HEREBY ORDERED** that Steen's Motion for Failure to

Comply with Court Order (DN 19) is **DENIED** and his Motion for Summary Judgment (DN 20)

is **GRANTED**.

A separate judgment will issue.

**Greg N. Stivers, Judge**
**United States District Court**
September 29, 2015

cc:   Plaintiff, *pro se*
      counsel of record

10